**KAZEROUNI LAW GROUP, APC**
Abbas Kazerounian, Esq. (249203)
ak@kazlg.com
Pamela E. Prescott, Esq. (328243)
pamela@kazlg.com
245 Fischer Avenue, Unit D1
Costa Mesa, CA 92626
Telephone: (800) 400-6808
Facsimile: (800) 520-5523

**MADAR LAW CORPORATION**
Alex S. Madar, Esq. (319745)
alex@madarlaw.net
11510 Eaglesview Ct
San Diego, CA 92127
Telephone: (858) 299-5879
Facsimile: (619) 354-7281

[Additional Counsel On Signature Page]

Attorneys for Plaintiff,
Michael Kinzer

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MICHAEL KINZER, Individually and On Behalf of All Others Similarly Situated,**<br><br>Plaintiff,<br><br>v.<br><br>**LIFEAID BEVERAGE CO.,**<br><br>Defendant. | **Case No.:** 5:21-cv-05589-EJD<br><br><u>**CLASS ACTION**</u><br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELEIF PURSUANT TO THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(C)**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiff MICHAEL KINZER ("Mr. Kinzer" or "Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint for damages, injunctive relief, and any other available legal or equitable remedies, resulting from the illegal actions of defendant LifeAID Beverage Co. ("LifeAID" or "Defendant") in negligently, knowingly and/or willfully contacting Plaintiff on Plaintiff's telephone, in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227(c) and related regulations, including the National Do-Not-Call provision of 47 C.F.R. § 64.1200(c), thereby invading Plaintiff's privacy.

2. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

3. Upon information and belief, Defendant sent automated text messages to Plaintiff and others similarly situated without their prior express written consent in order to solicit business. This is exactly the type of telephonic contact the TCPA was designed to prevent.

4. Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## NATURE OF THE ACTION

5. In 1991, Congress passed the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, in response to complaints about certain telemarketing practices

6. The Federal Trade Commission ("FCC") is charged with the authority to issue regulations implementing the TCPA. According to findings by the FCC, automated calls and text messages are prohibited under the TCPA because receiving them is a greater invasion of privacy and nuisance compared to live solicitation calls.

7. In 2015, the FCC noted, "[m]onth after month, unwanted robocalls and texts, both telemarketing and informational, top the list of consumer complaints received by the Commission." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 18 FCC Rcd. 14014, ¶ 1 (2015).

8. According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021:

> Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

9. The FCC has issued rulings clarifying that consumers are entitled to the same consent-based protections for text messages as they are for calls to wireless numbers.

10. Unlike more conventional advertisements, text message advertisements can actually cost their recipients money because wireless phone users must pay their wireless service providers either for each text message they receive or incur a usage allocation deduction to their text messaging or data plan, regardless of whether the message is authorized.

11. The transmission of an unsolicited text messages to a cellular device is distracting and aggravating to the recipient and intrudes upon the recipient's seclusion.

## JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case arises out of violation of federal law. 47 U.S.C § 227(c).

13. As Defendant directs and conducts business within the State of California and this judicial district, personal jurisdiction is established.

14. Personal jurisdiction and venue are proper in the Northern District of California pursuant to 28 U.S.C. § 1391 for the following reasons: (1) Defendant is

headquartered within this judicial district; (2) Defendant conducted business within this judicial district at all times relevant; and (3) Defendant originated the conduct complained of herein from within this judicial district. Specifically, Defendant invaded Plaintiff's privacy by contacting Plaintiff on his cellular telephone, which occurred while Defendant was located in the County of Santa Cruz, State of California, which is within this judicial district.

## PARTIES

15. Plaintiff is an individual residing in the County of Clark, State of Nevada, and is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

16. Upon information and belief, Plaintiff alleges that LifeAID is a corporation, incorporated in the State of Delaware with its principal place of business located at 2833 Mission Street, Santa Cruz, California 95060.

17. Upon information and belief, LifeAID is a privately-owned corporation founded in or around 2011 that manufactures "premium, healthy, and convenient nutritional products designed to boost performance and speed recovery for people pursuing active and healthy lifestyles."[1]

18. Defendant is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

19. Plaintiff alleges that at all times relevant herein, Defendant conducted business in the State of California, in the County of Santa Cruz, and within this judicial district.

## FACTUAL ALLEGATIONS

20. Plaintiff is, and at all times mentioned herein was, the subscriber of the cellular telephone number (702) ***-8026 (the "8026 Number").

---

[1] *See* https://www.linkedin.com/company/lifeaid-beverage-co-/ (last visited July 13, 2021).

21. On or about July 29, 2020, Plaintiff added the 8026 Number to the National-Do-Not-Call Registry.

22. On or about April 28, 2021, Defendant sent a text message to Plaintiff's 8026 Number, stating, "LIFEAID: *Free Gift Alert* Get a FREE FITAID Hip Pack + drink holder when you spend $75 or more! Not valid on wholesale accts. --> www.lifeaidbevco.com/hippack." The text message was sent from the telephone number (831) 264-0714 (the "0714 Number").

23. On or about May 25, 2021, Defendant sent Plaintiff's 8026 Number another text message again advertising its services, stating in part, "LIFEAID: Order TODAY and get a FREE 3-pk"

24. On or about May 27, 2021, Defendant sent another text message from the 0714 Number to Plaintiff's 8026 Number, stating, "LIFEAID: *Flash Sale!* Get 30% OFF FITAID GO - today only! Hurry over to --> www.lifeaidbevco.com/fitsale to stock up or use code 30FIT (discount shown in cart)." Said text message also included a picture of a 30% off coupon for Defendant's fitness drink, FITAID GO.

25. On June 3, 2021, Defendant sent another text message from the 0714 Number to Plaintiff's 8026 Number, stating, "LIFEAID: Give your immune system a delicious boost with 30% OFF IMMUNITYAID GO - *Today only!* Click --> www.lifeaidbevco.com/strong or use code STRONG."

26. On June 23, 2021, Defendant sent another text message from the 0714 Number to Plaintiff's 8026 Number, stating, "LIFEAID: *NEW!* Special-Edition FITAID Strawberry Lemonade is now available! Same great formula, new delicious flavor. Shop now! www.lifeaidbevco.com/fitsummer."

27. The aforementioned text messages contained no method for Plaintiff to instruct Defendant to stop sending Plaintiff unwanted text messages.

28. At no point did Plaintiff ever provide his telephone number (including the 8026 Number) or any other contact information to Defendant. Nor had Plaintiff recently inquired about Defendant's services to Defendant or any third-parties.

29.     Prior to receiving the April 28, 2021 text message from Defendant, Plaintiff had never had any contact with Defendant for business purposes, or otherwise. And, Plaintiff did not provide the 8026 Number in any contests, sweepstakes, or similar promotional events in the recent months leading up to April of 2021.

30.     Because Plaintiff is alerted when a text message is received on his cellular device, the unsolicited text messages that Defendant transmitted to Plaintiff's cellular device invaded Plaintiff's privacy and distracted Plaintiff upon receipt.

31.     Such text messages constitute telephone solicitations pursuant to 47 C.F.R. § 64.1200(c), as they were an attempt to promote or sell Defendant's products.

32.     Plaintiff has received numerous telephone solicitations from Defendant within a 12-month period.

33.     Plaintiff did not provide Defendant with his cellular telephone number at any point in time, nor did he give permission for Defendant to contact him on his cellular telephone.

34.     Plaintiff does not have established business relationship with Defendant, and did not have any relationship to Defendant during the time of the telephone solicitations from Defendant.

35.     Plaintiff did not have a personal relationship with Defendant at any point in time. Nor did Plaintiff give Defendant prior express invitation or consent in writing for Defendant to contact Plaintiff's cellular telephone for marketing or solicitation purposes.

36.     Upon information and belief, Defendant did not make the telephone solicitations to Plaintiff's 8026 Number in error. This is especially true because Defendant sent Plaintiff at least five marketing text messages over the span of a few months.

37.     Upon information and belief, at all relevant times, Defendant failed to establish and implement reasonable practices and procedures to effectively prevent

telephone solicitations in violation of the regulations prescribed under 47 U.S.C. § 227(c)(5), including 47 C.F.R. § 64.1200(c).

38. Through Defendant's aforementioned conduct, Plaintiff suffered an invasion of a legally protected interest in privacy, which is specifically addressed and protected by the TCPA.

39. Because Plaintiff is alerted by his cellular device, by auditory or visual means, whenever he receives a text message, Plaintiff was personally affected by the unwanted and unsolicited text messages that Defendant transmitted to Plaintiff's cellular device because they were a nuisance, invasive and intruded upon Plaintiff's seclusion upon receipt. Plaintiff was distracted and irritated as a result of receiving Defendant's several unsolicited marketing text messages.

40. The TCPA was intended to give individuals control over how and where they receive telephonic communications. When Defendant sends such text messages and calls to consumers whose cellular phone numbers are registered on the National Do-Not-Call Registry without their express permission or consent, it fails to address or respect the limitations imposed by the TCPA and its related regulations. In doing so, Defendant invades Plaintiff and similarly situated persons' privacy and violates the spirit and intent behind the TCPA.

**CLASS ACTION ALLEGATIONS**

41. Plaintiff brings this action on behalf of Plaintiff and all others similarly situated (the "Class").

42. Plaintiff represents, and is a member of, the Class, pursuant to Fed. R. Civ. P. 23(b)(2) and/or (b)(3), which is defined as follows:

> All persons within the United States who, while registered on the National Do-Not-Call Registry for at least 31 days, received without prior express written consent more than one telephone call or text message during any twelve-month period made by or on behalf of Defendant that promoted

1  Defendant's products or services within the four years prior
2  to the filing of the Complaint.

3      43.     Excluded from the Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and their legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; (3) those persons who have suffered personal injuries as a result of the facts alleged herein; and (4) those persons who had an established business relationship or personal relationship with Defendant at the time of the telephone solicitations.

       44.     Plaintiff reserves the right to redefine the Class, and to add and redefine any additional subclass as appropriate based on discovery and specific theories of liability.

       45.     The Class that Plaintiff seeks to represent contains numerous members and is clearly ascertainable including, without limitation, by using Defendant's records to determine the size of the Class and to determine the identities of individual Class members.

**Numerosity**

       46.     The Class members are so numerous that joinder of all members would be unfeasible and impractical. The membership of the Class is currently unknown to Plaintiff at this time. However, given that, on information and belief, Defendant sent or transmitted, or had sent or transmitted on its behalf, unsolicited text messages and/or calls to hundreds, if not thousands, of customers' telephones nationwide during the proposed class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

**Commonality**

       47.     There are questions of law and fact common to the Class that predominate over any questions affecting only individual Class members. Those common questions

of law and fact include, without limitation, the following:

    a) Whether within the four years prior to the filing of this Complaint, Defendant or its agents placed more than one telephone solicitation to the members of the Class whose telephone numbers were on the National Do-Not-Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

    b) Whether Defendant obtained prior express written consent to place telephone solicitations to Plaintiff or the Class members' telephones;

    c) Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation;

    d) Whether Defendant's conduct was knowing and/or willful; and

    e) Whether Defendant or affiliates, subsidiaries, or agents of Defendant should be enjoined from engaging in such conduct in the future.

**Typicality**

48. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom they are similarly situated, and Plaintiff's claims (or defenses, if any) are typical of all Class members' as demonstrated herein.

49. As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to send telephone solicitations, Plaintiff is asserting claims that are typical of the Class. Consequently, the claims of Plaintiff are consistent with and not antagonistic to those of the other Class members Plaintiff seeks to represent.

50. Plaintiff and all members of the Class have been impacted by, and face continuing harm arising out of, Defendant's violations or misconduct as alleged herein.

**Adequacy**

51. Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class member with whom Plaintiff is similarly situated, as demonstrated herein. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationship, conflicts, or differences with any Class member. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer class actions and violations of Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq*. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class member. Neither Plaintiff nor Plaintiff's counsel have any interests adverse to those of the other Class members.

**Predominance**

52. Questions of law or fact common to the members of the Class predominate over any questions affecting only individual members of the class. The elements of the legal claims brought by Plaintiff and members of the Class are capable of proof at trial through evidence that is common to the class rather than individual to its members.

**Superiority**

53. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class members is impracticable and questions of law and fact common to the Class predominate over any questions affecting only individual members of the Class. Even if every individual Class member could afford individual litigation, the court system could not. It would be unduly burdensome to the courts if individual litigation of the numerous cases were to be required.

54. Individualized litigation also would present the potential for varying,

FIRST AMENDED CLASS ACTION COMPLAINT; CASE NO.: 5:21-CV-05589-EJD

inconsistent, or contradictory judgments, and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues. By contrast, conducting this action as a class action will present fewer management difficulties, conserve the resources of the parties and the court system, and protect the rights of each Class member. Further, it will prevent the very real harm that would be suffered by numerous Class members who will be unable to enforce individual claims of this size on their own, and by Defendant's competitors, who will be placed at a competitive disadvantage because they chose to obey the law. Plaintiff anticipates no difficulty in the management of this case as a class action.

55. The prosecution of separate actions by individual Class members may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class members not parties to those adjudications, or that would otherwise substantially impair or impede the ability of those non-party Class members to protect their interests.

56. The prosecution of individual actions by Class members would establish inconsistent standards of conduct for Defendant.

57. Defendant has acted or refused to act in ways generally applicable to the Class, thereby making appropriate final and injunctive relief or corresponding declaratory relief with regard to members of the Class as a whole. Likewise, Defendant's conduct as described above is unlawful, is capable of repetition, and will continue unless restrained and enjoined by the Court.

58. The Class may also be certified because:

(a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendants;

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to them that would, as a

practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and,

(c) Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final and injunctive relief with respect to the members of the Class as a whole.

59. This suit seeks only damages and injunctive relief for recovery of statutory damages on behalf of Class and it expressly is not intended to request any recovery for personal injury and claims related thereto.

**FIRST CAUSE OF ACTION**
**NEGLIGENT VIOLATIONS OF THE TCPA**
**47 U.S.C. § 227(C)**

60. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

61. The foregoing acts and omissions of Defendant constitute numerous and multiple negligent violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), including implementing regulation 47 C.F.R. § 64.1200(c).

62. As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and all Class members are also entitled to, and do seek, an award of up to $500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

63. As a result of Defendant's negligent violations of 47 U.S.C. § 227(c), Plaintiff and all Class members are entitled to, and do seek, injunctive relief pursuant to 47 U.S.C. § 227(c)(5)(A) to prohibit such conduct violating the TCPA in the future.

//
//
//

## SECOND CAUSE OF ACTION
### KNOWING AND/OR WILLFUL VIOLATIONS OF THE TCPA
### 47 U.S.C. § 227(C)

64. Plaintiff repeats and incorporates by reference the allegations set forth above as though fully stated herein.

65. The foregoing acts and omissions of Defendant constitute numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each and every one of the above-cited provisions of 47 U.S.C. § 227(c), including implementing regulation 47 C.F.R. § 65.1200(c).

66. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and all Class members are also entitled to, and do seek, an award of up to $1,500.00 in statutory damages, for each and every violation, pursuant to 47 U.S.C. § 227(c)(5).

67. As a result of Defendant's knowing and/or willful violations of 47 U.S.C. § 227(c), Plaintiff and all Class members are entitled to, and do seek, injunctive relief pursuant to 47 U.S.C. § 227(c)(5)(A) to prohibit such conduct violating the TCPA in the future.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and members of the Class, prays for the following relief:

- That this action be certified as a Class Action, establishing the Class and any appropriate sub-classes that the Court may deem appropriate;
- Appointing Plaintiff as the representative of the Class;
- Appointing the law firms representing Plaintiff as Class Counsel;
- An award of up to $500.00 in statutory damages to Plaintiff and each Class member for each and every negligent violation by Defendant of 47 U.S.C. § 227(c), pursuant to 47 U.S.C. § 227(c)(5);

- An award of up to $1,500.00 in statutory damages to Plaintiff and each Class member for each and every knowing and/or willful violation by Defendant of 47 U.S.C. § 227(c), pursuant to 47 U.S.C. § 227(c)(5);
- An order providing injunctive relief prohibiting such conduct in the future, pursuant to 47 U.S.C. § 227(c)(5)(A);
- Pre-judgment and post-judgment interest;
- Costs of suit;
- An award of reasonable attorneys' fees and costs to Plaintiff and the Class, pursuant to the common fund doctrine and, *inter alia,* California Code of Civil Procedure § 1021.5;
- Any other further relief that the court may deem just and proper.

### JURY DEMAND

68. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff is entitled to, and demands, a trial by jury.

Dated: September 9, 2021                                      Respectfully submitted,

**KAZEROUNI LAW GROUP, APC**

By:   s/ Abbas Kazerounian
        ABBAS KAZEROUNIAN, ESQ.
        ak@kazlg.com
        ATTORNEY FOR PLAINTIFF

**Additional Plaintiff's Counsel**

**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6806
Facsimile: (800) 520-5523