UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MICHAEL KINZER,<br><br>    Plaintiff,<br><br>    v.<br><br>LIFEAID BEVERAGE CO.,<br><br>    Defendant. | Case No. 21-cv-05589-EJD   (VKD)<br><br>**ORDER RE NOVEMBER 19, 2021 DISCOVERY DISPUTE**<br><br>Re: Dkt. No. 33 |

Plaintiff Michael Kinzer and defendant LifeAid Beverage Co. ("LifeAid") ask the Court to resolve their dispute concerning the proper scope of Mr. Kinzer's Rule 30(b)(6) deposition of LifeAid. Dkt. No. 33. The Court held a hearing on the matter on November 30, 2021. Dkt. No. 36. Having considered the parties' submission and arguments, the Court resolves the dispute as set forth below.

**I.    BACKGROUND**

Mr. Kinzer asserts claims on behalf of himself and a putative class for negligent and willful violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, et seq. Dkt. No. 14.[1] Mr. Kinzer alleges that after he added his cellular telephone number to the national Do-Not-Call ("DNC") registry, he received several unwanted marketing text messages from LifeAid. *Id.* ¶¶ 20-40. Among other defenses, LifeAid contends that it had an established business relationship with Mr. Kinzer and was therefore authorized to send all of the text messages specifically identified in the first amended complaint. Dkt. No. 33 at 4. In addition,

---

[1] Mr. Kinzer has moved for leave to file a second amended complaint. *See* Dkt. No. 27.

1  LifeAid contends that Mr. Kinzer's cellular telephone number is a business telephone number as
2  to which the DNC regulations do not apply. *Id.*

3  The parties filed a joint case management statement on October 12, 2021. Dkt. No. 22. In
4  the joint statement, Mr. Kinzer advised the Court that he intended to seek leave to file a second
5  amended complaint to add factual allegations "uncovered through further investigations and
6  informal exchange of discovery," including identification of three text messages LifeAid sent Mr.
7  Kinzer in July 2021. *Id.* at 3-4. LifeAid advised the Court that it would object to the motion for
8  leave to file a second amended complaint. *Id.* at 4. In addition, the parties advised the Court that
9  they disputed the scope of discovery that should be permitted. *Id.* at 5-6. Mr. Kinzer argued that
10 discovery related to his individual claims overlaps substantially with discovery related to class
11 certification, and he urged the Court to permit all discovery to proceed without bifurcation or
12 phasing. *Id.* LifeAid argued that discovery should be limited to Mr. Kinzer's individual claims
13 only, pending resolution of LifeAid's anticipated motion for summary judgment. *Id.* at 6.

14 Judge Davila issued a case management order on October 15, 2021, in which he ordered
15 that "the parties may engage in discovery relating to Plaintiff's individual claim," and stayed all
16 other discovery. Dkt. No. 26 at 1. The case management order requires the parties to complete
17 discovery on Mr. Kinzer's individual claims by January 28, 2022. *Id.* at 2.

18 On October 22, 2021, Mr. Kinzer filed a motion for leave to file a second amended
19 complaint. Dkt. No. 27. LifeAid filed an opposition to the motion, and the matter is set for
20 hearing before Judge Davila on February 10, 2022—after the deadline for the parties to complete
21 discovery regarding Mr. Kinzer's individual claims. Dkt. Nos. 28, 29.

22 The parties now dispute whether Mr. Kinzer's deposition notice improperly seeks class-
23 related discovery contrary to the Court's case management order, and whether it seeks discovery
24 that is otherwise outside the scope of Mr. Krinzer's individual claims.

25 **II.    LEGAL STANDARD**

26 A party may obtain discovery of any matter that is relevant to a claim or defense and that is
27 "proportional to the needs of case, considering the importance of the issues at stake in the action,
28 the amount in controversy, the parties' relative access to relevant information, the parties'

1    resources, the importance of the discovery in resolving the issues, and whether the burden or

2    expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule

3    30(b)(6) permits a party to take the deposition of a corporation. Fed. R. Civ. P. 30(b)(6). Where a

4    party has described with reasonable particularity the matters for examination, the corporation must

5    designate an officer, director, managing agent, or other consenting representative to testify on its

6    behalf regarding information known or reasonably available to the corporation. *Id.*

### III. DISCUSSION

The parties dispute whether Mr. Kinzer should be permitted to depose LifeAid with respect to 17 topics: 5, 11-15, 17-21, 23-27, and 30. This order addresses each topic or set of topics separately below. However, the Court first considers whether discovery relating to Mr. Kinzer's individual claims (i.e. the scope of discovery permitted by the case management order) should be limited to claims based on three text messages LifeAid alleged sent to Mr. Kinzer on July 1, 14 and 15, 2021 ("the July 2021 text messages"), or whether it should be limited to claims based on the text messages specifically identified by date in the first amended complaint.

#### A. July 2021 Text Messages

During the hearing on this discovery dispute, Mr. Kinzer advised the Court that the July 2021 text messages are the *only* text messages that he presently contends violate the TCPA and the DNC implementing regulations. Dkt. No. 36. He argues that these text messages are within the scope of the operative complaint, even though they are not specifically identified. *Id.; see also* Dkt. No. 27-1 at 5; Dkt. No. 27-3 (proposed second amended complaint). LifeAid argues that Mr. Kinzer has expressly abandoned his individual claims based on text messages specifically identified by date in the first amended complaint, given the existence of an established business relationship between him and LifeAid that encompasses the dates on which those text messages were sent, and he has not yet been permitted to amend his complaint to add new allegations, including allegations concerning the July 2021 text messages. Dkt. No. 33 at 4.

Judge Davila did not resolve or comment on the parties' dispute regarding the viability of Mr. Kinzer's individual claims or whether amendment would be permitted. As relevant here, Judge Davila did not limit discovery to claims based solely on the text messages specifically

3

identified by date in the first amended complaint, and he did not foreclose discovery of claims based on the July 21, 2021 text messages. Given that fact discovery of Mr. Kinzer's individual claims must be completed by January 28, 2022, and given Mr. Kinzer's representation that he will not proceed with individual claims based on the earlier text messages, the Court concludes that, for present purposes, discovery should be limited to Mr. Kinzer's individual claims for alleged violations of the TCPA based on the July 2021 text messages only.

### B.  Topic 5

Topic 5 asks for testimony about complaints, lawsuits, regulatory actions, claims, and other disputes concerning LifeAid's text messages during the past 4 years.[2] Dkt. No. 33, Ex. A at 2. Mr. Kinzer argues that such discovery is relevant to his claim that LifeAid's violation of the TCPA was knowing and willful, and more specifically, relevant to question of LifeAid's intent, knowledge, motive, or absence of mistake with respect to its "text messaging campaign." Dkt. No. 33 at 2. LifeAid objects that this topic is not limited to Mr. Kinzer's individual claims but reflects an effort to obtain class-related discovery. *Id.* at 5.

Mr. Kinzer provides insufficient justification for Topic 5. While he is permitted to take discovery related to whether LifeAid's July 2021 text messages were sent in willful violation of the TCPA, Topic 5 is not limited to testimony likely to bear on this question. Among other things, this topic is not limited to the circumstances on which Mr. Kinzer bases his individual TCPA claims but encompasses any prior complaint or dispute "relating to text messages" associated with LifeAid. *Id.*, Ex. A at 2. The cases on which Mr. Kinzer relies are inapposite; neither *Johnson* nor *Shapiro* addresses whether discovery of prior complaints by others is relevant to a named plaintiff's individual TCPA claim, as opposed to the claims of the putative class. *See Johnson v. Moss Bros. Auto Grp.*, No. EDCV192456FMOSPX, 2020 WL 6565315, at *5 (C.D. Cal. Sept. 14, 2020) (class discovery not stayed; class certification discovery not bifurcated from other discovery); *Shapiro v. Dynamic Recovery Sols., LLC*, No. 18-CV-60035-BB, 2018 WL 8130559, at *3, *4 (S.D. Fla. July 26, 2018) (class discovery not bifurcated from merits discovery).

---

[2] As a compromise, Mr. Kinzer suggests limiting this topic to the past 2 years.

LifeAid need not provide testimony on Topic 5 as presently drafted.

**C.    Topic 11**

Topic 11 asks for testimony about the companies LifeAid uses to send text message to any telephone number associated with Mr. Kinzer, including any text message aggregator. Dkt. No. 33, Ex. A at 3. Mr. Kinzer argues that this testimony is relevant to whether LifeAid's liability is direct or vicarious, and will also permit him to learn whether a third party may have discoverable information. Dkt. No. 33 at 2. LifeAid objects that the first amended complaint and the proposed second amended complaint do not raise any issues of vicarious liability, so discovery about a possible third-party vendor is not relevant to any issue in the case. *Id.* at 5.

The Court agrees with Mr. Kinzer that he is entitled to know whether LifeAid used a third party to send the July 2021 text messages to his cellular telephone so that he may learn whether such third party has discoverable information. However, Topic 11 is too broad, as it is not limited to the July 2021 text messages or the cellular telephone number to which they were sent.

Mr. Kinzer may obtain testimony with respect to Topic 11, so long as the inquiry is limited to the companies, if any, LifeAid used to send the July 2021 text messages to Mr. Kinzer's cellular telephone number (702) ***-8026. *See* Dkt. No. 14 ¶ 20.

**D.    Topics 12-14**

Topics 12-14 ask for testimony about LifeAid's policies and procedures: (a) "concerning text messages," (b) "for updating consumer contact information," and (c) "related to or concerning" the TCPA, including the DNC provisions and implementing regulations. Dkt. No. 33, Ex. A at 3. Mr. Kinzer argues that this discovery may be relevant to the claims of the putative class, but it is also relevant to his individual claims, which include an allegation that LifeAid failed to implement reasonable practices and produces for compliance with the TCPA. Dkt. No. 33 at 2 (citing Dkt. No. 14 ¶ 37). Mr. Kinzer also argues that LifeAid "asserts defenses in its Answer that put its policies and practices at issue." *Id.* (citing Dkt. No. 20 at 5). LifeAid objects to Topics 12-14 on the ground that because only the July 2021 text messages are at issue, and because LifeAid has tendered the maximum statutory penalty to Mr. Kinzer for those messages, there is no case or controversy and no Article III jurisdiction. *Id.* at 5. In addition, LifeAid

objects that Topics 12-14 are directed to class-related discovery. *Id.*

As with Topic 5, Mr. Kinzer provides insufficient justification for Topics 12-14. While he is permitted to take discovery related to whether LifeAid's July 2021 text messages were sent in willful violation of the TCPA, Topics 12-14 are not limited to testimony likely to bear on this question. As an initial matter, Mr. Kinzer's allegation regarding LifeAid's failure to implement reasonable practices and procedures is made solely "on information and belief" based on the allegations in the immediately preceding paragraphs of the first amended complaint, *see* Dkt. No. 14 ¶¶ 32-36, many of which Mr. Kinzer apparently concedes cannot support his claims. Moreover, the Court has reviewed LifeAid's affirmative defenses at the citation Mr. Kinzer provides, *see* Dkt. No. 20 at 5, and finds no mention of LifeAid's practices and procedures in the affirmative defenses.

Mr. Kinzer is correct that if LifeAid has implemented "reasonable practices and procedures" to effectively prevent prohibited text messages to Mr. Kinzer, it may assert this as an affirmative defense to a claim for violation of 47 U.S.C. § 227(c). Mr. Kinzer is also correct that he may obtain discovery in support of his individual claims even if such discovery is also relevant to class-related discovery. The problem with Topics 12-14 is that they are not limited to practices and procedures related to the circumstances on which Mr. Kinzer bases his individual TCPA claims; they are much broader. *See, e.g., Cabrera v. Gov't Emps. Ins. Co.*, No. 12-61390-CIV, 2014 WL 2999206, at *11 (S.D. Fla. July 3, 2014) (finding deposition topic "overbroad" and limiting *class* discovery of manuals, practices, and procedures to conduct falling within scope of class definition).

LifeAid need not provide testimony on Topics 12-14 as presently drafted.

### E. Topic 15

Topic 15 asks for testimony about any training that LifeAid's employees and agents receive relating to the TCPA. Dkt. No. 33, Ex. A at 3. Mr. Kinzer argues that training is relevant to the question of whether LifeAid sent the July 2021 text messages in error. Dkt. No. 33 at 3. LifeAid objects to this discovery on the ground that because only the July 2021 text messages are at issue, and because LifeAid has tendered the maximum statutory penalty to Mr. Kinzer for those

messages, there is no case or controversy and no Article III jurisdiction. *Id.* at 5. In addition, LifeAid objects that Topic 15 is directed to class-related discovery. *Id.*

The Court agrees with Mr. Kinzer that if LifeAid contends that the July 2021 text messages were sent in error, Mr. Kinzer is entitled to ask questions concerning the alleged error, including the nature of any training received by the person or persons responsible for the sending of the text messages. However, if LifeAid does not contend the text messages were sent in error, this deposition topic is not relevant.

Mr. Kinzer may inquire whether LifeAid contends that the July 2021 text messages were sent in error, and if so, he may further inquire about any training received by the person or persons responsible for the sending of the messages.

**F.   Topics 17-21 and 23-26**

Topics 17-21 and 23-26 ask for testimony concerning "the basis for [LifeAid's] response in its Answer to the allegation(s) of paragraphs [20, 27, 30, 31, 32, 36, 38, 39] in the First Amended Complaint."[3] Dkt. No. 33, Ex. A at 3-4. LifeAid argues that these topics refer to paragraphs of the first amended complaint containing allegations on which Mr. Kinzer no longer basis his claim, and that such discovery is therefore irrelevant. Dkt. No. 33 at 5-6. Mr. Kinzer argues that the discovery is still relevant to his individual claims based on the July 2021 text messages. *Id.* at 3. Mr. Kinzer also argues that discovery of LifeAid's response to allegations concerning text messages that are no longer at issue is generally relevant to the question of willfulness. *Id.*

Because all of these deposition topics ask for the basis for LifeAid's *answer* to allegations in the first amended complaint, Mr. Kinzer's disavowal of many of those allegations necessarily impacts the relevance and utility of these deposition topics. Some of the allegations in the first amended complaint (which LifeAid has answered) are identical to allegations in the proposed second amended complaint (which LifeAid has not answered). These topics are: Topic 17 (*compare* Dkt. No. 14 ¶ 20 *with* Dkt. No. 27-3 ¶ 20); and Topic 21 (*compare* Dkt. No. 14 ¶ 32

---

[3] Topics 18 and 26 seek identical information.

7

*with* Dkt. No. 27-3 ¶ 33). However, the remaining topics—Topics 18, 19, 20, 23, 24, 25, 26—all concern allegations in the first amended complaint that reference specific text messages that no longer form the basis for Mr. Kinzer's individual claims. For this reason, the basis for LifeAid's responses to those particular allegations are not relevant to Mr. Kinzer's *current* claims. Moreover, the Court is not persuaded that LifeAid's responses to allegations concerning text message for which Mr. Kinzer concedes there is no liability have any bearing on the question of whether the July 2021 text message were sent in willful violation of the TCPA.

Mr. Kinzer may obtain testimony on Topics 17 and 22. LifeAid need not provide testimony on Topics 18-20 and 23-26.

### G. Topic 27

Topic 27 asks for testimony regarding "all information and facts surrounding documents [LifeAid] will rely upon at the time of trial to establish prior express invitation or permission from [Mr. Kinzer]." Dkt. No. 33, Ex. A at 4. The parties do not separately address this topic, even though it differs from Topics 17-21 and 23-26, which refer to specific paragraphs of the first amended complaint.

If LifeAid contends that it had a prior express invitation to contact Mr. Kinzer, or his permission to do so, when the July 2021 text messages were sent, Mr. Kinzer may obtain testimony regarding the factual bases for any such contentions.

### H. Topic 30

Topic 30 asks for testimony regarding "all settlement communications and offers of [LifeAid] as it relates to [Mr. Kinzer's] individual claims in this action, including all responses from [Mr. Kinzer] concerning the same." Dkt. No. 33, Ex. A at 4-5. The parties agree that LifeAid offered to pay Mr. Kinzer $4,500 to resolve his individual claims relating to the July 2021 text messages, plus $2,500 for his attorneys' fees. *See* Dkt. No. 29-1 ¶ 12, Ex. A; Dkt. No. 33 at 6. LifeAid contends that, having received such an offer, Mr. Kinzer now lacks standing to pursue his individual claims. Dkt. No. 33 at 5. Mr. Kinzer says that he should be permitted to "ask questions about this topic." *Id.* at 4. LifeAid objects to any inquiry regarding why LifeAid offered this amount on the ground that such information is privileged. *Id.* at 6.

Neither the fact of LifeAid's settlement offer, nor its content, is privileged. The offer is not even confidential, as LifeAid itself has already made the offer public and has relied upon it in opposing Mr. Kinzer's motion for leave to file a second amended complaint. While Mr. Kinzer may not inquire regarding any communications LifeAid (or its representatives) had with LifeAid's counsel regarding LifeAid's settlement proposal, Mr. Kinzer may ask LifeAid's representative questions about the offer, including why LifeAid made the offer. If the answer to a question would require the witness to disclose a privileged communication or legal advice, counsel may so object at the time the question is posed.

Mr. Kinzer may obtain testimony on Topic 30.

## IV.   CONCLUSION

For the foregoing reasons, Mr. Kinzer may take the Rule 30(b)(6) deposition of LifeAid, consistent with the Court's resolution of the parties' disputes detailed above.

**IT IS SO ORDERED.**

Dated: December 9, 2021

VIRGINIA K. DEMARCHI
United States Magistrate Judge